### TILLEY B. NORTON *vs.* ELI SIMONDS.

Middlesex. January 10. — 31, 1878. AMES & LORD, JJ., absent.

In an action of replevin, it appeared that the property, which was worth over $50, originally belonged to A., who sold it to B. by a bill of sale and took his note therefor, but did not deliver the property. After this, A. and B. mutually agreed to rescind the sale and surrender the note and bill of sale, which was done a few days afterwards. On the same day and before the exchange of the papers, A. sold the property to the plaintiff, receiving part payment thereof; and both A. and the plaintiff informed the defendant of the sale, and demanded the property of him. *Held,* that even if the oral agreement between A. and B. to rescind the sale was within the statute of frauds, it had been fully performed; and that the plaintiff had such title that he could maintain the action.

REPLEVIN of a wagon. Trial in the Superior Court before *Pitman,* J., who, being of the opinion that the plaintiff had shown no title to the wagon, directed the jury to return a verdict for the defendant, and reported the case for the considera-

tion of this court. If the direction was wrong, the verdict was to be set aside and a new trial ordered; otherwise, judgment was to be entered on the verdict. The facts appear in the opinion.

*A. Cottrell*, for the plaintiff.

*J. H. Benton, Jr.*, for the defendant.

ENDICOTT, J. The defendant sets up no title in the wagon, but relies solely on defect in the plaintiff's title. The only question is who, upon the facts stated, owned the wagon when this action was brought.

It appears that Kendall, who had previously sold it to Whittaker by a bill of sale and had received Whittaker's note therefor, but had not delivered the wagon, agreed orally with Whittaker to rescind the contract, surrender the note, and take back the bill of sale. A few days after, he gave up the note to Whittaker who returned the bill of sale. At the time, therefore, when this action was brought, Whittaker had no title to the wagon; for, assuming that the oral agreement was within the prohibition of the statute of frauds, the wagon being worth over $50, the agreement had been fully performed and the rights of the parties were unaffected by the statute. The statute does not prohibit such a contract or declare it to be illegal or void; and Whittaker having executed it could not have availed himself of the provisions of the statute, on the ground that there was no memorandum in writing. *Stone* v. *Dennison*, 13 Pick. 1. *Trowbridge* v. *Wetherbee*, 11 Allen, 361. *Townsend* v. *Hargraves*, 118 Mass. 325, and cases cited.

After this oral agreement, and before the exchange of the papers, Kendall sold the wagon to the plaintiff for $100, and took the plaintiff's note for that amount, upon which the plaintiff paid $50 before they separated. At this time Kendall had an interest in the wagon under his contract with Whittaker— an interest which would become an absolute title as against Whittaker on the interchange of the papers, and the complete performance of the oral agreement. This interest he could assign or sell, and, having thus sold it for a valuable consideration, the title and all the rights afterwards perfected in him must enure to the benefit of the plaintiff; and the plaintiff can maintain this action against the defendant, who shows no title, in the same manner that Kendall could have maintained it if he had not

sold to the plaintiff. To hold otherwise would be to enable Kendall to avoid his sale to the plaintiff because Whittaker might have refused to execute his oral agreement, if he had chosen to do so. It was said by the court in *Townsend* v. *Hargraves*, before cited, that " the contract is treated as a subsisting valid contract when it comes in question between other parties for purposes other than a recovery upon it." The opinion in that case explains some expressions in the opinion in *Marsh* v. *Hyde*, 3 Gray, 331, which were quoted and relied on by the defendant in his argument. See *Beal* v. *Brown*, 13 Allen, 114.

We are therefore of opinion that the ruling of the learned judge at the trial was wrong; and, by the terms of the report, the
*Verdict must be set aside.*