### O. C. PACE *v.* H. B. CLAFLIN & CO.

**Partnership—Withdrawal of Debt.**

A partner, when a debt is incurred, is not relieved by the fact that before a note is given to evidence such debt he has withdrawn from the firm.

**Non est Factum.**

Non est factum pleaded by a member of a firm to a note given by the firm for a debt, after dissolution of the firm but before actual notice to a creditor, is not a defense to a suit by the creditor on such note who has had previous dealing with the firm before the execution of the note.

**Notice of Dissolution.**

Notice of the dissolution of a partnership published in a newspaper is not sufficient to inform one of such dissolution who has had previous dealings with the firm unless it is shown that such notice came to the knowledge of such person.

**Plea in Abatement.**

Under our Code pleading an answer in the nature of a plea in abatement for want of necessary parties must not only be affirmative in character, but must contain the names of those who ought to be parties but are not and these averments must be proved by the defendant.

APPEAL FROM JEFFERSON CIRCUIT COURT.

May 12, 1876.

OPINION BY JUDGE COFER:

These suits were brought upon promissory notes signed by R. E. Cross & Co., and payable to H. B. Claflin & Co. It was stated in the petitions that H. B. Claflin, E. E. Eames and E. W. Bankroft composed the plaintiff firm at the dates of the notes sued upon, and that R. E. Cross, R. H. Baker, O. C. Pace and W. F. Alexander, at said times composed the defendant firm.

Pace answered and denied that he was a member of the firm of R. E. Cross & Co. at the dates of the several notes, and denied that said notes, or any of them, were his acts and deeds. He further averred that he was formerly a member of said firm, but had withdrawn therefrom on a day anterior to the date of said notes, of which withdrawal and dissolution due notice was given in the Courier Journal, a daily newspaper published and extensively circulated in the city of Louisville, the place of business of said firm, so that at the time of the creation of the supposed indebtedness sued on this defendant was not a member of said firm of R. E. Cross & Co.; and of this plaintiffs had legal and sufficient notice.

Further answering, he said that the plaintiffs and others, creditors of R. E. Cross & Co., had compromised, compounded, and settled with R. E. Cross, and had agreed to release him from further liability on account of the notes sued upon, so that the said Cross was no longer bound for said indebtedness or any part of it, whereby he, Pace, if ever liable therefor, was released. In his answer in one of the cases, Pace averred that he did not know, and had not knowledge or information sufficient to form a belief whether the persons named

as plaintiffs were at the times stated, partners under the firm name of H. B. Claflin & Co.

The plaintiffs afterwards amended both petitions, and alleged that at the dates when the notes sued on were executed the firm of H. B. Claflin & Co. consisted of H. B. Claflin, E. E. Eames, H. J. Fairchild, Dexter N. Force, Daniel Robinson, John Claflin and W. S. Dunn. By consent the allegations of the amended petitions were to be "taken as specifically controverted upon the record without any answer thereto being filed."

As respects the plea of non est factum, the evidence showed that in the spring of 1873 Pace was a member of the firm of R. E. Cross & Co., doing business in Louisville; that between that time and the date of the dissolution of the firm of R. E. Cross & Co., and the withdrawal of Pace from said firm, the firm repeatedly bought goods of H. B. Claflin & Co., wholesale merchants in the city of New York, for portions of which the firm of R. E. Cross & Co. gave notes from time to time; that the goods for which the notes sued on were given were all, save one, small bills purchased prior to May 24, 1874; that early in that year the firm of R. E. Cross & Co. was dissolved, but that Pace continued in the store as a salesman until May 24 when notice of the dissolution was published in the daily Courier Journal, a newspaper published in Louisville; but there was no evidence that the plaintiffs had received notice, or had any knowledge of the dissolution until after the 10th of August, 1874. The notes all bear date in July, 1874, and were probably not delivered to the payees until August 10 of that year. They were signed with the firm name by R. E. Cross, and there was no evidence that any special authority had been given him by Pace to execute the notes.

The firm of R. E. Cross & Co. having been dissolved before the notes were executed, it is earnestly argued by counsel for Pace that R. E. Cross had no authority as partner to execute the notes in the firm name, that as he is not shown to have had any special authority, the plea of non est factum is not overcome by the evidence, and that the court erred in not so adjudging. "The doctrine is well settled that after a partnership had been dissolved, and legal notice of the dissolution has been given, one partner cannot bind his co-partners by the execution of a note, or any other instrument of writing which creates a new cause of action, even for the renewal of a partnership note or the settlement or liquidation of a partnership account." *Merrit v. Pollys, et al.,* 16 B. Mon. 355.

These notes were certainly executed by one partner after the dis-

solution of the partnership and without any new authority to do so, or indeed any authority at all, unless he had such authority because of the late partnership. But this is not enough to avoid the notes on the plea of non est factum. To do this there must have been previous legal notice of the dissolution. Pace admitted in his answers that he had been a member of the firm, but sought to avoid liability on notes executed by one of the partners in the firm name on the ground that the partnership had been dissolved before the notes were executed; and in order to do so he did not stop when he had averred that the partnership was dissolved before the execution of the notes, but he went on and averred in addition that they were executed after the "plaintiffs had legal and sufficient notice" of the dissolution. Without this latter averment the answer would not have been sufficient.

In regard to dealings with them by the firm of R. E. Cross & Co., while Pace was a member of that firm, what sort of notice would, as to the plaintiffs, be legal and sufficient to avoid the notes executed after the dissolution? Upon this subject the authorities are clear and decisive.

The rule is thus stated in Story on Partnerships, Sec. 161: "Public notice given in some such reasonable way (by publication in local newspapers), will not be deemed actual and express notice; but it will be good presumptive evidence, and sufficient for a jury to conclude all persons, who have not had previous dealings with the firm. As to persons who have been previously in the habit of dealing with the firm, it is requisite that actual notice should be brought home to the creditor, or at least, that the credit should be given under circumstances, from which actual notice may be inferred." See also *Kennedy v. Bohannon*, 11 B. Mon. 118; *Merritt v. Polly, et al.*, 16 B. Mon. 355; *Montague v. J. & C. Reakert*, 6 Bush 393.

The plaintiffs were entitled to actual notice of the dissolution. The only notice given prior to the execution and delivery of the notes was by a newspaper publication not shown to have come to their knowledge. Such publication, we have seen, is not actual notice. Wherefore the plaintiffs did not have "legal and sufficient notice," and Cross had authority to bind Pace by the execution of the notes in the firm name. Lindley on Partnerships, 294.

The evidence wholly failed to sustain the allegation in the answers in respect to the compromise and compounding with Cross. No agreement to release Cross is proved. The plaintiffs were not present at the time when it is attempted to prove that the composition was

made. They were represented by attorneys, but the attorneys made no agreement to release Cross; and if they had done so, no authority from their clients to so agree had been shown; and it is clear that such authority is not incident to the ordinary employment of attorneys at law.

It is next insisted that the allegations in the petitions that the persons named therein as plaintiffs composed the firm of H. B. Claflin & Co. at the time the notes were executed, having been specifically denied, were not proved, and that the actions should have been dismissed on that ground. When in an action upon a note payable to a firm, all the individuals composing the firm are not named as parties, the action cannot be maintained unless the objection on account of the defect of parties is waived. If the defect of parties appears on the face of the petition the defendant may demur, otherwise the objection must be taken by answer. Sec. 123, and Subsec. 120, Civil Code. Unless so taken the objection is waived.

It does not appear in the petitions in these cases that there was any defect of parties plaintiff, and it was, therefore, necessary to take the objection by answer. That was attempted to be done by denying the allegation that the persons named as plaintiffs composed the firm of H. B. Claflin & Co. at the date of the notes.

Since the adoption of the code of practice there is no such pleading known in our system as a plea in abatement. Petition, answer, reply and demurrer comprise our whole list, and a pleading in the nature of a plea in abatement is now called an answer. Secs. 120 and 123, Civil Code. What, then, are the requisites of an answer in the nature of a plea in abatement for defect of parties? The code has dispensed with the forms of pleading, but not with the substance. No pleading is good under the code which does not contain all the averments essential to a good pleading under the former system. *Hill v. Barrett, et al.,* 14 B. Mon. 83.

What, then, were the essentials under the common-law system of pleading of a plea in abatement for non-joinder of plaintiffs? From the very nature of the plea it was affirmative, and could not be made in merely negative language. The pleader confessed that there was a cause of action against him on the facts alleged in the declaration, for otherwise he would have demurred instead of pleading. Confessing that the declaration showed a cause of action in the plaintiffs, he undertook to avoid it by showing that on account of some fact not disclosed by the declaration the plaintiff had no right to maintain the action. Now he could only show that the plaintiff had no right to re-

cover by showing that some one not a party was a necessary party; and this he could only do by naming in his plea the person alleged to be jointly interested with the plaintiff; and therefore a plea in abatement, because some of those who were necessary parties had not joined in the declaration or been made defendants, was always held bad unless it disclosed to the plaintiff who it was who should be a party, or, in other words, unless the plea gave the plaintiff a better writ. 1 Chitty's Pleading 481. This was necessary to enable the plaintiff to proceed at all; and if issue was joined on the plea, the onus probandi was on the defendant, because he had, by his plea, confessed and avoided the plaintiff's cause of action, and as to the matter of avoidance he held the affirmative.

These rules still prevail, and the simple denial in the answer did not devolve upon the plaintiff the duty of proving that the persons named as plaintiffs were the only members of the plaintiff firm. This was in effect decided in *Petty v. Malier,* 14 B. Mon. 246. In that case the plaintiff sued in her own name to recover a tract of land. Her petition did not disclose the fact that she was a married woman. The defendant, however, pleaded that fact in his answer, and proved it on the trial. In commenting on the case this court said: "That the plaintiff has no legal capacity to sue is cause of demurrer, if the fact appears on the face of the petition. * * * But when the fact does not appear in the petition, but is relied upon in the answer and proved upon the trial, the defendant is entitled to the full benefit of the objection."

If the answer in that case had contained a denial that the plaintiff had legal capacity to sue, or an averment that she had not such capacity, but had failed to state the facts which showed that she had no such capacity, it would have been just such a plea as those in these cases; but there, as here, there would have been nothing to prove.

It seems to us entirely clear, both upon principle and authority, that under our code an answer in the nature of a plea in abatement for want of necessary parties must not only be affirmative in its character, but must contain the names of those who ought to be parties but are not, and that the averment must be proved by the defendant. *Petty v. Malier,* 14 B. Mon. 246; *Vanbuskirk, et al., v. Levy,* 3 Met. 133; *Graves, et al., v. Ward, Sanders and Hunt,* 2 Duvall 301.

Perceiving no error to the prejudice of the appellant, the judgments are *affirmed*.

*Alexander & Dickinson, for appellant.*
*Muir, Biger & Davie, for appellee.*